# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. 2:24-cv-2029 |
| Plaintiff, | JURY DEMAND |
| v. |  |
| PATRIOT BANK, |  |
| Defendant. |  |

## **COMPLAINT**

## INTRODUCTION

1. The United States of America (the "United States") brings this action against Patriot Bank ("Patriot" or the "Bank") under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619 and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f to remedy discrimination in Patriot's residential mortgage lending.

2. The FHA and ECOA prohibit creditors, such as banks, from discriminating in home loans and other credit services on the basis of race, color, national origin, and other characteristics.

3. "Redlining" is one type of discrimination prohibited under the FHA and ECOA. Redlining occurs when lenders deny or discourage loan applications, deny equal access to home loans and other credit services, or avoid providing home loans and other credit services to neighborhoods based on the race, color, or national origin of the residents of those neighborhoods.

4. From 2015 through at least 2020 (the "Relevant Time Period"), Patriot engaged in a pattern or practice of unlawful redlining. As alleged in detail herein, Patriot avoided providing

1

home loans[1] and other mortgage services in majority-Black and Hispanic neighborhoods in and around Memphis, Tennessee.[2]

5. From 2015 through at least 2020, Patriot's redlining practices included locating and maintaining nearly all its branches and loan production offices and all its mortgage loan officers in majority-white neighborhoods and avoiding having branches or offices in—or having mortgage loan officers serve—majority-Black and Hispanic areas. Patriot also concentrated its outreach, advertising, and marketing in majority-white neighborhoods and avoided marketing to majority-Black and Hispanic areas.

6. Further, as early as 2015 and throughout the Relevant Time Period, Patriot was aware of its redlining risk and knew that its operations were underserving Black and Hispanic borrowers and majority-Black and Hispanic neighborhoods. Patriot failed to take meaningful steps to address this redlining risk.

7. As a result of the above-described practices, Patriot generated disproportionately low numbers of loan applications and home loans during each year in the Relevant Time Period from majority-Black and Hispanic neighborhoods in and around Memphis, as compared to similarly-situated lenders.

8. Patriot's conduct and practices were intended to deny, and had the effect of denying, equal access to home loans for those residing in, or seeking credit for properties located

---

[1] For purposes of this Complaint, the terms "mortgage loans" or "home loans" refer to all loans that Patriot Bank and other lenders must report under the Home Mortgage Disclosure Act ("HMDA"), 12 U.S.C. §§ 2801–2810, and "mortgage lending" refers to providing those loans.

[2] A "majority-Black and Hispanic" census tract is a residential census tract where more than 50 percent of the residents are identified as either "Black or African American" or "Hispanic or Latino" by the United States Census Bureau. This Complaint uses "majority-Black and Hispanic census tract," "majority-Black and Hispanic area," and "majority-Black and Hispanic neighborhood" interchangeably and does the same for "majority-white tract," "majority-white area," and "majority-white neighborhood."

in, majority-Black and Hispanic neighborhoods, and otherwise discouraged those individuals from applying for home loans on the basis of the race, color, or national origin of the residents of those neighborhoods.

9. Patriot's conduct was not justified by a legitimate, nondiscriminatory reason or business necessity and was not necessary to achieve a substantial, legitimate, nondiscriminatory interest.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action because it is brought under federal laws, 42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h), presents a federal question, 28 U.S.C. § 1331, and is brought by the United States, 28 U.S.C. § 1345.

11. Venue is proper in the Court under 28 U.S.C. § 1391 and in this division because Patriot conducts business in, and a substantial part of the events or omissions giving rise to the claims occurred in, this District and division.

## PARTIES

12. Plaintiff the United States brings this action to enforce the FHA and ECOA. The FHA and ECOA authorize the Attorney General to bring a civil action in federal district court whenever he has reason to believe that an entity is engaged in a pattern or practice of resistance to the full enjoyment of rights secured by the FHA and ECOA. 42 U.S.C. § 3614(a); 15 U.S.C. § 1691e(h). The FHA further authorizes the Attorney General to bring suit where the defendant has denied rights to a group of persons and that denial raises an issue of general public importance. 42 U.S.C. § 3614(a).

13. Defendant Patriot Bank is a state-chartered bank headquartered in Millington, Tennessee, subject to the regulatory authority of the Board of Governors of the Federal Reserve

System ("FRB"). Patriot is a fully-owned subsidiary of Patriot of Tennessee Corporation, which in turn is partly-owned by Security Bancorp of Tennessee, Inc., a holding company headquartered in Halls, Tennessee.

14. Patriot describes itself as a "community bank" and its slogan is "Downhome Banking the Way It Should Be!" Patriot offers commercial, consumer, and residential mortgage banking services and products.

15. From 2015 through 2020, Patriot originated residential mortgage loans in and around the Memphis area.

16. Patriot currently maintains eight branches and two loan production offices in Tennessee.

17. As of September 30, 2023, Patriot's total assets equaled about $459.45 million.

18. Patriot is subject to the FHA, ECOA, and their respective implementing regulations, 24 C.F.R. pt. 100, 12 C.F.R. pt. 1002.

19. Patriot is a "creditor" under ECOA, 15 U.S.C. § 1691a(e), and engaged in "residential real estate-related transactions" under the FHA, 42 U.S.C. § 3605.

## FACTUAL ALLEGATIONS

### Patriot's Assessment Area

20. As a depository bank, Patriot is subject to the requirements of the Community Reinvestment Act ("CRA"), 12 U.S.C. §§ 2901–2908, and its enabling regulations, which require most banks to meet the credit needs of the communities that they serve. Each bank subject to the CRA self-identifies the communities that it serves in the bank's "assessment area." Federal regulators look at a bank's assessment area in evaluating whether an institution is meeting the credit needs of its entire community.

21. Patriot's self-designated assessment area consists of three contiguous counties in southwest Tennessee: Fayette, Shelby, and Tipton Counties (the "Memphis assessment area" or "assessment area"). *See* **Exhibit A**.

22. According to the U.S. Census Bureau's 2015 American Community Survey ("ACS") data, Patriot's Memphis assessment area has a population of more than 1.03 million; of this population, 49.5 percent are Black, 40.9 percent are white, and 5.6 percent are Hispanic or Latino. In other words, 55 percent of the population of the Bank's CRA assessment area is Black or Hispanic.

23. Patriot's assessment area is comprised of 245 residential census tracts, of which 141 (57.5 percent) are majority-Black and Hispanic.

24. Shelby County, where the City of Memphis is located, contains 97.8 percent of the majority-Black and Hispanic census tracts and 95.9 percent of the Black and Hispanic population in Patriot's assessment area. The other counties in the Bank's assessment area have few majority-Black and Hispanic census tracts: Fayette County has only one and Tipton County has only two majority-Black and Hispanic census tracts.

25. The Bank added Shelby County in its entirety to its assessment area for the first time in or around 2012. Prior to 2012, the Bank's assessment area only included census tracts in north and east Shelby County outside of the Interstate-240/Interstate-40 beltway, which encircles most of the City of Memphis.

26. Patriot is a prominent residential mortgage lender in its assessment area. From 2015 through 2020, Patriot consistently has ranked in the top 15 for lenders based on mortgage loan application volume in the Memphis assessment area.

27. From 2015 through 2020, about 90.8 percent of Patriot's total mortgage loan

application volume came from its Memphis assessment area.

**Patriot's Branches and Offices Were Concentrated in Majority-White Neighborhoods**

28. During the Relevant Time Period, Patriot operated six branches and three loan production offices in its Memphis assessment area. All of those branches and office locations could accept mortgage loan inquiries from prospective applicants.

29. During the Relevant Time Period, although 57.5 percent of the census tracts in the Bank's assessment area are majority-Black and Hispanic, only two of Patriot's six branches were located in a majority-Black and Hispanic neighborhood. None of Patriot's three loan production offices were located in a majority-Black and Hispanic neighborhood. *See* **Exhibit B**.

30. Patriot's sole two branches in a majority-Black and Hispanic area are located in Covington, Tennessee, in central Tipton County, in the same residential census tract with only 51.7 percent Black and Hispanic residents. These two branches were established or acquired by Patriot at a time when the surrounding neighborhood was majority-white. These branches are located in a surrounding neighborhood that is now majority-Black and Hispanic due to demographic shifts in population, rather than due to any actions by the Bank to serve Black and Hispanic communities.

31. Although Patriot added the entirety of Shelby County—including the City of Memphis—to its assessment area in 2012, during the Relevant Time Period, Patriot continued to locate and maintain its branches and loan production offices to serve the credit needs of the predominantly-white communities in north and east Shelby County, Tipton County, and Fayette County.

32. Patriot maintained the same branch and loan production office network from 2007 to 2017 with no growth or contraction. The Bank opened its first new loan production office in 10

6

years in 2017, followed by a new branch in 2019. Both locations were located in majority-white areas. The Bank did not consider proximity to majority-Black and Hispanic neighborhoods as a factor when expanding its branch and loan production office network.

33. Prior to March 2023, the Bank's public Facebook page evidenced the Bank's intent to avoid serving the predominantly-Black and Hispanic portions of its assessment area, including the City of Memphis in western Shelby County. The Bank's "About" description read: "Patriot Bank is a full-service bank with a focus on community service. The bank serves the growing markets of North and East Shelby County, Tipton County, and West Fayette County with a wide range of consumer and commercial accounts and a mortgage division."

34. Patriot knew its branches were not serving the credit needs of majority-Black and Hispanic areas in its Memphis assessment area but did not take steps to address this failure for years.

35. By concentrating nearly all its branches and loan production offices in majority-white areas, Patriot discouraged residents of majority-Black and Hispanic areas from applying for and obtaining home loans from Patriot and restricted their access to credit.

**Patriot's Mortgage Loan Officers Served Majority-White Neighborhoods but Not Majority-Black and Hispanic Neighborhoods**

36. During the Relevant Time Period, Patriot's mortgage loan officers served the credit needs of majority-white neighborhoods but did not serve the credit needs of majority-Black and Hispanic neighborhoods.

37. As a self-described "community bank," the Bank relied primarily on its mortgage loan officers to develop local relationships and referral sources to generate residential mortgage loan applications and cultivate relationships to serve the credit needs of residents in its Memphis assessment area.

38. During the Relevant Time Period, the Bank assigned all of its loan officers to branches and loan production offices in majority-white areas; it did not assign a single mortgage loan officer to Patriot's sole two branches located in a majority-Black and Hispanic neighborhood in central Tipton County.

39. In the majority-white neighborhoods in Patriot's assessment area where mortgage loans officers were assigned to branches and loan production offices, mortgage-lending services were available to walk-in prospective applicants. Because Patriot did not assign any mortgage loan officers to its sole two branches located in a majority-Black and Hispanic neighborhood, these services were not as easily available to the residents of that neighborhood.

40. During the Relevant Time Period, if a prospective applicant walked into or called one of Patriot's two branches located in a majority-Black and Hispanic neighborhood and inquired about residential mortgage loans, staff at those branches would refer the prospective applicant to a different Patriot branch location where mortgage support was available over 15 miles away.

41. During the Relevant Time Period, Patriot took no actions to train or incentivize its mortgage loan officers to compensate for its lack of branches or loan production offices in majority-Black and Hispanic neighborhoods.

42. The Bank took no meaningful steps, apart from any isolated steps voluntarily taken by any of its mortgage loan officers, to generate mortgage loan applications from majority-Black and Hispanic areas in the Memphis assessment area.

43. Patriot's failure to assign any mortgage loan officers to majority-Black and Hispanic areas, and failure to take any meaningful efforts to compensate for its lack of branches, loan production offices, and mortgage loan officers in majority-Black and Hispanic neighborhoods, was intended to deny, and had the effect of denying, equal access to home loans

for those residing in, or seeking credit for properties located in, majority-Black and Hispanic neighborhoods in its assessment area.

### Patriot's Marketing Targeted Majority-White Neighborhoods and Avoided Majority-Black and Hispanic Neighborhoods

44. From 2015 through 2020, Patriot made minimal efforts to market and advertise to residents of majority-Black and Hispanic neighborhoods.

45. During the Relevant Time Period, a significant portion of the Bank's advertising appeared in print publications. The geographic reach for almost all of these print publications was limited to the predominantly-white areas of northern and eastern Shelby, Tipton, and Fayette Counties.

46. During the Relevant Time Period, the Bank advertised daily on two radio stations: WKBL 1250 AM and WKBQ 93.5 FM. On its Facebook page, WKBL 1250 AM describes itself as "Tipton County's Radio Station since 1954."[3] On its advertising webpage, WKBQ 93.5 FM, also known as U.S. 51 Country Covington, identifies the following geographies within its reach: Tipton, Lauderdale, Fayette, and Haywood Counties, as well as North Shelby County (Millington, Arlington).[4] The Bank did not advertise on radio stations specifically targeted to Black and Hispanic communities in the Memphis assessment area until 2020.

47. During the Relevant Time Period, the Bank advertised on two billboards. Both billboards were located in majority-white census tracts in northern Shelby County and in Tipton County. The Bank did not advertise on a billboard located in a majority-Black and Hispanic census tract until 2020.

48. In 2015, Patriot personnel prepared a Strategic Marketing Plan for Minority and

---

[3] *See* https://perma.cc/K3GC-PQNH.
[4] *See* https://perma.cc/4PJP-FF4P.

Low to Moderate Income Communities (the "Marketing Plan").

49. The Marketing Plan proposed to use various media outlets to reach communities of color, including, *inter alia*, producing radio spots with local stations known for reaching Black and Hispanic communities in order to build brand awareness; leasing billboards in Black and Hispanic communities to promote lending activities; and using email to reach current and prospective Black and Hispanic customers.

50. The Marketing Plan also provided that the Bank would maintain current and relevant information on its website and social media accounts to promote the Bank within Black and Hispanic communities. As noted above, as recently as March 2023, the Bank's Facebook page stated that the Bank "serves the growing markets of North and East Shelby County, Tipton County, and West Fayette County."

51. During the Relevant Time Period, the Bank failed to implement almost all of the proposals outlined in its own marketing plan.

52. Patriot's marketing efforts discouraged residents and prospective applicants in majority-Black and Hispanic neighborhoods from seeking credit from Patriot in the Memphis assessment area.

### Disproportionately Low Numbers of Home Loan Applications from Majority-Black and Hispanic Neighborhoods

53. During the Relevant Time Period, Patriot's lending practices demonstrated a pattern of disproportionately failing to serve majority-Black and Hispanic neighborhoods in its assessment area, when compared with its peer lenders.

54. Patriot's policies and practices alleged herein—including the concentration of nearly all its branches and loan production offices, mortgage loan officers, marketing, and outreach in majority-white neighborhoods—have discriminated against and discouraged applicants and

10

prospective applicants in majority-Black and Hispanic neighborhoods in its assessment area from applying for and obtaining home loans and other mortgage-related services.

55. From 2015 through 2020, Patriot significantly underperformed its "peer lenders" in generating home mortgage applications from majority-Black and Hispanic neighborhoods in the Memphis assessment area. "Peer lenders" are similarly-situated financial institutions that received between 50 percent and 200 percent of the Bank's annual volume of home mortgage loan applications.

56. The disparity between the rate of applications generated by Patriot and the rate generated by its peer lenders from majority-Black and Hispanic neighborhoods was both statistically significant—meaning unlikely to be caused by chance—and sizable in every year from 2015 through 2020.

57. Specifically, of the 5,406 HMDA-reportable mortgage applications Patriot generated from 2015 through 2020 in its assessment area, only 454, or 8.4 percent came from residents of majority-Black and Hispanic areas. *See* **Exhibit C.** By contrast, during the same time period, Patriot's peers generated 29.6 percent of their HMDA applications from these same majority-Black and Hispanic neighborhoods. These disparities are statistically significant across the six-year period and in every year analyzed.

58. In other words, from 2015 through 2020, Patriot's peer lenders generated applications from majority-Black and Hispanic areas at three-and-a-half times the rate of Patriot.

59. The statistically significant disparities between applications Patriot generated from majority-Black and Hispanic neighborhoods and those that its peers generated show that there were significant numbers of residents in majority-Black and Hispanic areas in the Memphis assessment area who were seeking home loans. Patriot had no legitimate, non-discriminatory

reason to draw so few applications from these areas.

60. This data shows a statistically significant failure by Patriot, relative to its peer lenders, to draw applications for home loans and provide residential mortgage services to residents in majority-Black and Hispanic neighborhoods on a non-discriminatory basis from 2015 through 2020.

61. From 2015 through 2020, even when Patriot generated applications from majority-Black and Hispanic areas, the applicants themselves were disproportionately white. For applications Patriot generated in majority-Black and Hispanic census tracts, on average, 60.7 percent of the applications were made by white applicants.

### Disproportionately Low Numbers of Home Loans Made in Majority-Black and Hispanic Neighborhoods

62. Patriot's lending practices have discouraged prospective applicants in majority-Black and Hispanic neighborhoods from seeking residential mortgage loans. As a result, the Bank significantly underperformed its peer lenders in making residential mortgage loans in majority-Black and Hispanic neighborhoods in its Memphis assessment area.

63. The disparity between the rate of residential mortgage loans that Patriot made and the rate made by its peer lenders in majority-Black and Hispanic neighborhoods was both statistically significant—meaning unlikely to be caused by chance—and sizable in every year from 2015 through 2020.

64. Specifically, of the 4,774 HMDA-reportable residential mortgage loans Patriot made from 2015 through 2020 in its assessment area, only 365, or 7.6 percent were made in majority-Black and Hispanic areas. *See* **Exhibit D.** By contrast, Patriot's peers made 22.6 percent of their loans in these same majority-Black and Hispanic neighborhoods.

65. In other words, from 2015 through 2020, Patriot's peer lenders made home loans

in majority-Black and Hispanic areas at almost three times the rate of Patriot.

66. These disparities are statistically significant across the six-year period and in every year analyzed.

67. The level of lending by Patriot's peers demonstrates that there were thousands of qualified borrowers for home loans and sufficient mortgage loan demand in majority-Black and Hispanic neighborhoods in the Memphis assessment area. Patriot had no legitimate, non-discriminatory reason to originate so few loans from these areas.

68. The data show a statistically significant failure by Patriot to make home loans and provide residential mortgage services to qualified applicants in majority-Black and Hispanic neighborhoods on a non-discriminatory basis when compared with similarly-situated lenders from 2015 through 2020.

69. From 2015 through 2020, even when Patriot made loans in majority-Black and Hispanic areas, the loans themselves were disproportionately made to white borrowers. For loans Patriot made in majority-Black and Hispanic census tracts, on average, 67.3 percent of the loans were made to white borrowers.

**Patriot's Failure to Address its Redlining Risk**

70. By at least January 2015, Patriot was on notice from the FRB that its operations were underserving Black and Hispanic borrowers and majority-Black and Hispanic neighborhoods in its Memphis assessment area and that its lending practices were creating redlining risk.

71. By at least January 2015, Patriot was on notice from the FRB that its internal fair lending compliance management system was seriously deficient at identifying, measuring, or monitoring redlining risk.

72. Despite this notice, the Bank continued to maintain an inadequate fair lending

compliance management system that did not allow the Bank to adequately identify, measure, and monitor redlining risk or determine whether the Bank was serving the entirety of its assessment area, including the majority-Black and Hispanic census tracts in its assessment area.

73. During the Relevant Time Period, Patriot took no meaningful action to address its redlining risk or in response to its knowledge that it was underserving Black and Hispanic borrowers and majority-Black and Hispanic neighborhoods.

**Federal Reserve Board's Referral and the United States' Investigation**

74. In March 2019, the FRB initiated a consumer compliance examination of Patriot focused on redlining.

75. After completing its examination, the FRB determined that it had information suggesting that, between 2015 and 2018, Patriot structured its mortgage operations in the Memphis area to avoid providing equal access to credit to residents seeking mortgage loans in majority-Black and Hispanic areas and thereby engaged in a pattern or practice of discrimination in violation of the FHA and ECOA.

76. By correspondence dated November 24, 2020, the FRB notified the United States Department of Justice of this matter.

77. On January 21, 2021, the United States notified Patriot that it was opening an investigation into whether the Bank had engaged in unlawful redlining in violation of the FHA and ECOA.

78. Through that investigation, the United States determined that Patriot's discriminatory practices, as described herein, were intended to discriminate and discourage, and had the effect of discriminating and discouraging, applicants and prospective applicants from seeking or obtaining credit from Patriot on the basis of the race, color or national origin.

## COUNT I: VIOLATIONS OF THE FAIR HOUSING ACT

79. The United States incorporates all prior Paragraphs of the Complaint as if fully set forth herein.

80. Patriot's policies and practices constitute the unlawful redlining of majority-Black and Hispanic communities in its Community Reinvestment Act assessment area, the Memphis assessment area, on account of the racial, color, and national origin composition of those communities. Patriot's policies and practices were intended to deny, and had the effect of denying, equal access to home loans to residents of majority-Black and Hispanic communities and those seeking credit for properties located in those communities. Patriot's conduct was not justified by business necessity or legitimate business considerations.

81. Patriot's actions as alleged herein constitute:

   a. Discrimination on the basis of race, color, and national origin in making available residential real estate-related transactions, or in the terms or conditions of residential real estate-related transactions, in violation of the Fair Housing Act, 42 U.S.C. § 3605(a), and its implementing regulation, 24 C.F.R. §§ 100.110(b), 100.120;

   b. The making unavailable or denial of dwellings to persons because of race, color, and national origin, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a), and its implementing regulation, 24 C.F.R. § 100.50(b)(3); and

   c. Discrimination on the basis of race, color, and national origin in the terms, conditions, or privileges of the sale or rental of dwellings, or the provision of services or facilities in connection with the sale or rental of dwellings, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b), and its implementing

regulation, 24 C.F.R. §§ 100.50(b)(2), 100.65.

82. Patriot's policies and practices as alleged herein constitute:

   a. A pattern or practice of resistance to the full enjoyment of rights secured by the FHA; and

   b. A denial of rights granted by the FHA to a group of persons that raises an issue of general importance.

83. Patriot's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

84. Persons who have been victims of Patriot's discriminatory policies and practices are "aggrieved" as defined in 42 U.S.C. § 3602(i), and may have suffered damages as a result of Patriot's conduct in violation of the Fair Housing Act, as described above.

**COUNT II: VIOLATIONS OF THE EQUAL CREDIT OPPORTUNITY ACT**

85. The United States incorporates all prior paragraphs of the Complaint as if fully set forth herein.

86. Patriot's acts, policies, and practices as alleged herein constitute unlawful discrimination against applicants and prospective applicants, including by redlining majority-Black and Hispanic communities in its assessment area and engaging in acts and practices directed at prospective applicants that would discourage prospective applicants from applying for credit on the basis of race, color, or national origin in violation of the Equal Credit Opportunity Act and Regulation B. 15 U.S.C. § 1691 *et seq.*; 12 C.F.R. § 1002.4(a)-(b).

87. Patriot's policies and practices as alleged herein constitute a pattern or practice of discrimination and discouragement and resistance to the full enjoyment of rights secured by the

Equal Credit Opportunity Act, in violation of the Act. 15 U.S.C. § 1691e(h).

88. Patriot's pattern or practice of discrimination was intentional and willful and was implemented with reckless disregard for the rights of individuals based on their race, color, and national origin.

89. Persons who have been victims of Patriot's discriminatory policies and practices are "aggrieved" as defined in 15 U.S.C. § 1691e(i), and may have suffered damages as a result of the Patriot's conduct in violation of the Equal Credit Opportunity Act, as described above.

**REQUEST FOR RELIEF**

WHEREFORE, the United States prays that the Court enter an order that:

(1) Declares that the conduct of Defendant violates the Fair Housing Act;

(2) Declares that the conduct of Defendant violates the Equal Credit Opportunity Act;

(3) Enjoins Defendant, its agents, employees, and successors, and all other persons in active concert or participation with Defendant, from:

   A. Discriminating on account of race, color, or national origin in any aspect of their lending business practices;

   B. Discouraging applicants on account of race, color, or national origin;

   C. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant's unlawful practices to the position they would be in but for the discriminatory conduct;

   D. Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of Defendant's unlawful

practices, and providing policies and procedures to ensure all segments of Defendant's assessment area are served without regard to prohibited characteristics;

(4) Awards monetary damages against Defendant in accordance with 42 U.S.C. § 3614(d)(1)(B) and 15 U.S.C. § 1691e(h);

(5) Assesses a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest; and

(6) Awards the United States any additional relief the interests of justice may require.

**DEMAND FOR JURY TRIAL**

The United States demands trial by jury in this action on all issues so triable.

Respectfully submitted this 17th day of January, 2024.

|  |  |
|---|---|
|  | MERRICK B. GARLAND<br>Attorney General |
| KEVIN G. RITZ<br>United States Attorney<br>Western District of Tennessee | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
|  | CARRIE PAGNUCCO<br>Chief |
| s/ *Sarah Pazar Williams*<br>*(per email consent 1/16/24)*<br>SARAH PAZAR WILLIAMS (TN 031261)<br>Assistant United States Attorney<br>United States Attorney's Office<br>Western District of Tennessee<br>167 North Main Street, Suite 800<br>Memphis, TN 38103<br>Phone: (901) 544-4231<br>Fax: (901) 544-4230<br>sarah.williams2@usdoj.gov | s/ *Jenna A. Raden*<br>LUCY CARLSON<br>Deputy Chief<br>JENNA A. RADEN (DC Bar 1724701)<br>YENISEY RODRÍGUEZ (DC Bar 1600574)<br>Trial Attorneys<br>Housing & Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>150 M Street, NE<br>Washington, DC 20530<br>Phone: (202) 305-5452<br>Fax: (202) 514-1116<br>Jenna.Raden@usdoj.gov |